Filed 6/10/22  P. v. Wood CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LELAND WOOD,<br><br>Defendant and Appellant. | F082558<br><br>(Super. Ct. No. PCF389998)<br><br><br>**OPINION** |

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Tulare County.  Michael B. Sheltzer, Judge.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*    Before Levy, Acting P.J., Meehan, J. and De Santos, J.

## INTRODUCTION

A jury convicted Leland Wood (appellant) of inflicting corporal injury on a spouse or cohabitant (Pen. Code, § 273.5, subd. (a))[1] with an enhancement for the personal infliction of great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)). The court sentenced appellant to eight years in state prison.

On appeal, appellant contends it was error for the trial court to give CALCRIM No. 372, the jury instruction concerning the significance of flight. We conclude the instruction was supported by sufficient evidence, and any presumed error was harmless. Appellant also contends his prior serious felony enhancement (§ 667, subd. (a)(1)), which the trial court stayed at sentencing, must be stricken because it was never proven or admitted. Respondent concedes, and we accept respondent's concession. We strike the enhancement, and in all other respects, affirm.

## BACKGROUND

Appellant and P.O. began dating in 2015. As of the trial they were still in a dating relationship. They lived together in appellant's mother's house for several years. Friction eventually developed between P.O. and appellant's mother, and P.O. moved in with her nephew.

On the evening of December 11, 2019, P.O. and the nephew were inside the nephew's house when they heard shattering glass. The nephew went outside and saw a small white truck driving away. Appellant was known to drive a small white truck. P.O. went outside and saw the windshield of her car had been shattered. The nephew located a large rock on the ground next the car.

Believing appellant was the person who broke her windshield, P.O. got into her car and drove to appellant's mother's house, where appellant was still living. She parked a short distance from the house and called appellant on the phone. They argued over the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

windshield, which appellant denied breaking. Appellant then drove to P.O.'s location and parked his truck next to her car.

After appellant arrived, an altercation ensued between appellant and P.O. that resulted in P.O. suffering a severe injury to her left forefinger. At trial, P.O. claimed her finger was only "smashed" and denied losing any part of her finger, but photographs of the injury show the tip of the finger had been roughly severed above and behind the fingernail.

P.O. testified at trial that after appellant arrived, she exited her car and began hitting appellant through the driver's side window. She initially testified she opened the driver's side door and appellant began to drive away, causing the door to close on her hand and injure her finger. Later in her testimony, she claimed that when she attempted to open the door, appellant attempted to pull it closed, and during the struggle the door was closed on her hand.

The People introduced several prior statements by P.O. in which she stated appellant bit off the tip of her finger. In P.O.'s calls to 9-1-1, she can be heard screaming in pain and stating that appellant "bit my finger off." According to P.O.'s medical records, she told hospital staff that appellant "bit the tip of her left ring finger off." When interviewed at the hospital by a Tulare County Sheriff's Deputy, she stated that after she approached the driver's side window of appellant's truck, he "got a hold of my finger and bit my finger off." In her trial testimony, P.O. admitted she made these statements, but claimed she lied because she was angry at appellant about the broken windshield and because she had seen some photographs on appellant's phone that made her think he was cheating on her.

After P.O. suffered the finger injury appellant left P.O. and drove to his home. As he left, his truck clipped the bumper of P.O.'s car. He rushed into the house and asked his mother for a hug because he was probably going to jail that day. He also stated he was "going out in a blaze of glory" and he was going to pretend his cell phone was a gun

3.

so law enforcement would shoot him. When Tulare County Sherriff's deputies arrived, they located appellant's car parked in the driveway. Appellant's mother told them appellant was in the back bedroom where a roommate lived. The deputies loudly announced their presence and advised appellant to make his presence known, but he did not respond. The deputies searched the house and located appellant in the back bedroom and placed him under arrest.

Tulare County Sherriff's Deputy Fabian Serrano testified he interviewed P.O. on December 15, 2019. During the interview she told him the missing portion of her finger was never located so she was unable to have it reattached. She described a prior domestic violence incident in which appellant hit her in the face with a hard object wrapped in a blanket. She also stated appellant has previously made threats to kill her. P.O. testified she told Deputy Serrano about these prior incidents, but claimed she fabricated them.

## DISCUSSION

### I. The flight instruction was supported by sufficient evidence. Any presumed error was harmless.

The trial court gave the jury CALCRIM No. 372, the instruction concerning the significance of flight. The jury was instructed as follows:

> "If the defendant fled immediately after the crime was committed or after he was accused of committing the crime, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself."

Appellant's counsel objected to the instruction, arguing there was no evidence of flight because appellant merely returned to his home. The trial court disagreed, reasoning there was "sufficient evidence to support the idea he was fleeing, coupled with his statement to his mother." Appellant raises a similar argument on appeal, contending there was no evidence appellant acted to avoid observation or arrest.

4.

"[S]ection 1127c requires that whenever evidence of flight is relied on to show guilt, the court must instruct the jury that while flight is not sufficient to establish guilt, it is a fact which, if proved, the jury may consider." (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1243.) "In general, a flight instruction 'is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt.' [Citations.] ' "[F]light requires neither the physical act of running nor the reaching of a far-away haven. [Citation.] Flight manifestly does require, however, a purpose to avoid being observed or arrested." ' [Citation.] '*Mere* return to familiar environs from the scene of an alleged crime does not warrant an inference of consciousness of guilt [citations], but the *circumstances* of departure from the crime scene may sometimes do so.' [Citation.]" (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.)

We conclude the evidence was sufficient to support the flight instruction. Appellant left the scene immediately after severely injuring P.O. Given his relationship to the victim and the severity of the injury, the jury could reasonably infer appellant's failure to remain on scene was motivated by a consciousness of guilt and desire to avoid observation and arrest. Instead of attempting to help P.O. or waiting until emergency responders arrived, appellant fled home, suggesting appellant did not want to be present when law enforcement arrived.

Appellant's conduct after reaching his home also supported the flight instruction. His comments to his mother that he was about to be arrested and "going out in a blaze of glory" suggest he retreated to his house to prepare to resist arrest. Moreover, once sheriff's deputies entered his house, he hid in the back bedroom and ignored commands to make his presence known.

Appellant focuses on several of his actions he claims were inconsistent with flight. He notes that he only traveled a short distance to his home in full view of P.O., and he made no effort to conceal his truck. However, "[t]he evidentiary basis for the flight

5.

instruction requires sufficient, not uncontradicted, evidence." (*People v. Richardson* (2008) 43 Cal.4th 959, 1020.) Although appellant could have taken more effective steps to avoid observation and arrest, it was still proper to instruct the jury to consider whether appellant's conduct that was consistent with flight was motivated by a consciousness of guilt.

Even if we were to conclude the trial court committed instructional error, the error would have been harmless. Depending upon the basis of the claimed error, instructional error is reviewed under either *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*), or *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). Under the more stringent *Chapman* standard, which applies to errors of constitutional dimension, reversal is required unless the reviewing court can conclude beyond a reasonable doubt that the error did not contribute to the verdict. (*Chapman*, *supra*, 386 U.S. at p. 24.) Under the alternative *Watson* standard, which applies to errors of state law, reversal is not required unless it is reasonably probable the defendant would have obtained a more favorable result had the error not occurred. *(Watson*, *supra*, 46 Cal.2d at p. 836.)

We need not decide whether the *Chapman* or *Watson* standard for prejudicial error applies here because the error was harmless under either standard. The evidence establishing appellant's guilt was overwhelming. P.O. told the 9-1-1 dispatcher, responding officers, and medical personnel that appellant bit off the tip of her finger. While she claimed at trial that she had not been truthful with the 9-1-1 dispatcher, responding officers and medical personnel, her alternative explanation that her injury was caused by the car door defies common sense and does not comport with the photographs of her injury. She also provided conflicting explanations of how the door closed on her hand, and she refused to acknowledge she lost a portion of her finger. Her bias in favor of appellant was clear, and considering appellant's history of domestic abuse, it is also apparent she is afraid of him. Additionally, appellant's statement to his mother

6.

immediately after the incident that he was going to jail was compelling evidence of consciousness of guilt.

We also observe CALCRIM No. 372 instructs the jury that it is up to them to determine whether the defendant fled, and if so, the "meaning and importance of that conduct." The "cautionary nature" of this instruction mitigates potential prejudice by "admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory." (*People v. Jackson* (1996) 13 Cal.4th 1164, 1224.) Considering the nature of the instruction in conjunction with the overwhelming evidence of guilt, we conclude beyond a reasonable doubt any instructional error was harmless.

## II. Appellant's prior serious felony enhancement must be stricken because it was neither proven nor admitted.

Appellant contends his prior serious felony enhancement must be stricken because it was never proven. Respondent concedes, and we accept respondent's concession.

The information alleged two prior strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and two prior serious felony convictions (§ 667, subd. (a)(1)). Prior to trial, appellant waived his right to a jury trial on the truth of his prior convictions. However, following the jury's verdict, no court trial was ever held on the truth of the priors.

At sentencing, the trial court granted appellant's motion to dismiss his prior strike convictions pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. Addressing the prior serious felony enhancement, the court stated it was "not imposing the additional five years for the 667 (a) (1)." The abstract of judgment indicates a single prior serious felony enhancement was found true, but sentence was stayed.

A prior serious felony enhancement must be "either admitted by the defendant in open court or found to be true by the trier of fact." (§ 1170.1, subd. (e).) Here, appellant did not enter an admission, and no trial was held as to the truth of the enhancement. Accordingly, the prior serious felony enhancement must be stricken.

## **DISPOSITION**

Appellant's prior serious felony enhancement (§ 667, subd. (a)(1)) is stricken. The trial court is directed to prepare an amended abstract of judgment and forward copies to the appropriate entities. In all other respects, the judgment is affirmed.